Good morning and may it please the court. Gia Kim appearing on behalf of appellant Todd Paishon. And would you get either speak a little louder or get a little closer to your mic? Yes your honor, I will do so. I'm at the same podium as previous counsel. Gia Kim appearing on behalf of appellant Todd Paishon. I'd trouble concluding that a person who is in handcuffs while in the backseat of a police car is in custody for Miranda purposes. And this Paishon's situation here was not appreciably different. She was sitting in the backseat of a police car with their hands cuffed behind her back and no reasonable person in that position would think that they were free to terminate and interview and leave. And there's several factors that add up to custody here. First, Ms. Paishon did not enter the car voluntarily. Another officer instructed officer Martinez to quote put her in the backseat, which he did. While she was told several times it was true that she was not under arrest, she was not told that she was free to leave. And in fact she was told a couple times that she was being detained, which I believe to a reasonable layperson and the government hasn't really disputed this, means that you were being kept or held in custody. Ms. Kim, let's assume your client was in custody in the back of the police car. I want to ask you, and I know you, you were listening to the previous argument because you're at the same podium. I want to ask you some similar questions. What occurred while she was in custody in the police car and what So while she was in custody, that happened, we would say, at starting about a minute 11, she was placed in the police car. Right. And I've looked at the videos and it seems to me the only real statement that comes out of that is her statement that the stuff was already in the car when I got there. Yes, Your Honor. And yes, so that is the main statement that we are challenging on appeal and that we Okay, so let's assume that's excludable. Why isn't the error harmless given the other evidence and what she says after she's Mirandized? Well, it's the government's burden on this constitutional error to show harmlessness beyond a reasonable doubt. And it isn't harmless. I think the best indicator, well, I think the government understates the importance of Marco Contreras to its case. And as they do note that he was the only other person in the car. Otherwise, we know that she's driving the car at the time he runs back with the mail. He supplies all of the most damning details about her role in this offense, starting from he said she provided the materials for the tool. She helped make it. She actively fished for mail. They had been doing this for some time and had washed checks together. None of that is corroborated by any eyewitness testimony, any criminal history on Ms. Paishon's part, any fingerprints on the mail or on the tool. So to have this one point of intersection between their stories and the government elicited from Officer Martinez, it played the video where she says the mail is already in the car. It then asked him what Marco Contreras said. He said the mail is already in the car. And then they called him to the stand and he said, yes, not only did I say that, but that was part of our prearranged plan because we were sort of joint venturers in this endeavor from the outset. And given Marco Contreras' I would say dubious credibility, his many prior felonies for very similar offenses and all offenses involving dishonesty, his lying to the police in this very case, his substantial incentive to point the finger at Ms. Paishon for consideration. I have a question. Judge, you froze for a second. Can you hear us, Judge Seiler? Why don't we stop the clock while we get Judge Seiler back? I was asking a question. I didn't know it. Oh, turn the whole thing off. But I have a question about- We're back from recess. So go ahead, Judge Seiler. Okay. I was asking Ms. Kim, from what I understand in your brief, your client is due to be released in July. Does your client want to win this case and then go back for a new trial? That is my understanding, Your Honor. Yes, that she is- I know you want to change the conditions of supervised release, but it seems to be strange that you're going to have a new trial sometime in the future and have to go through all this again, even if you win this appeal. Yes, Your Honor. It is not my call, but my client does wish to challenge this case. So just to go back on the homelessness question, you know, the jury was cautioned doubly about Mr. Contreras' testimony, both because of his criminal history, the offenses involving dishonesty, and because he was a cooperating witness receiving benefits from the government. And I think that this is not just a mere false exculpatory statement. It's not just one of the inconsistent statements, which there are other ones in this record. It was the point which really provided some scaffolding for his story, which otherwise doesn't have any independent evidence to support it. Can I ask you about that, counsel? Why don't the things that your client says after being Mirandized support his story in sort of the same fashion? Well, she said, Your Honor, that they were driving, he left the car, he came back with the mail. At that point, she saw the fishing line. He said something like, girl, watch what I do, and left again. And that's a point where he was spotted by Officer Martinez. And, you know, Your Honor, I agree that could be sufficient to uphold these convictions. But the analysis is different here on I think the jury could have well considered that, you know, we may have good cause not to believe a word this guy says. He's lied continuously for a long time. He lied to the officers in this case, unlike Ms. Paishon, who didn't. But, you know, there is this point, the government has drawn our attention to an opening twice in closing at which their stories intersect. And he said, you know, this was part of our plan. We're working together. We agreed to tell him this. And they did, in fact, tell him this. And that was a recorded statement of my clients. So while that other information may be sufficient, it would go towards possession or control the intention to control the intent to facilitate. I don't think that destroys the harmful nature of this Miranda error here due to the serious credibility problems with Marco Contreras. And you indicated you wanted to save a couple minutes. I've been trying to watch the clock for you. Just a good time? Yes, Your Honor. Let's hear from the government. Good morning, Your Honors, and may it please the court. Jenna Williams on behalf of the United States. This court should first affirm defendant's conviction for possession of stolen mail and aiding and abetting the possession of stolen mail because the district court did not err in admitting defendant's pre-Miranda statements at issue as she was not in custody at the time those statements were made. But regardless, this court need not even consider the Miranda issue because the record at trial and the short jury deliberations of less than two hours make clear that the admission of this limited false exculpatory statement in which the defendant did not admit to any of the critical details of the crime charged, even if an error was harmless beyond any reasonable doubt. And perhaps I'll begin with the harmlessness point to pick up where Miss Kim left off. And I think, you know, they made her point is that, you know, the case hinged so much on the testimony of the co defendant and, you know, cooperating witness that a reasonable jury could have had doubt as to the veracity of that. And then if you take the statements out is as well, there isn't much left. What's your response to that? Yes, Your Honor. So first, I want to address the role that this statement played in Contreras' testimony. And I think it's clear from the entirety of his testimony and the rest of the evidence at trial that his credibility did not turn on this one limited statement. There were several other points, I think at least seven or eight points of other corroboration for his testimony and several important points. And I can go through them, that he and the defendant had been friends for years, that they were staying together at a quality inn hotel in Downey, California that night, that they ended up using their friend's car rather than defendant's car, because hers broke down, that they stopped along the way to their friend's house that they were going to to get drugs, that they'd fished from multiple different collection boxes and multiple different times. And the defendant acted as the getaway driver while he stole mail out of collection boxes. And all of those were those were those statements by Contreras independently corroborated? Yes, at least the ones that I think are the most important from those. One, that they fished out of multiple collection boxes, completely independent evidence from Contreras in this case, established that they fished out of three different collection boxes. I'm sorry, I'm making, maybe I didn't make myself clear. I know Contreras said that. I take it Ms. Kim's point is maybe he wasn't believable. And so I'm trying to figure out whether or not besides what he said, there was independent evidence that what he said was it was true. Um, on these points, Your Honor, there was, and I apologize if I misunderstood. The point I was trying to make about the multiple collection boxes is that there was independent evidence from Contreras that there was fishing from three different collection boxes in the same game. There was victim testimony where two different victims said, I put my mail in, you know, the first one said, I put my mail in mailbox one. The second one said, I put my mail in mailbox two. Um, those were two separate mailboxes. And then Officer Martinez saw Contreras running as he drove by. And when he saw them initially, he saw... Okay, and I apologize. Now I understand. You said there's independent evidence from Contreras. You mean there's evidence independent from Contreras? Yes, sir. Yes. Okay. Yes, Your Honor. Um, there was evidence from other sources than him that that was true. And I think that fact alone is incredibly, uh, important for this case. There's simply no way, um, you know, defendant's sole argument was that she was the unwitting getaway driver. She didn't know what he was going to do. And he did this. That's simply not plausible in light of the amount of the mail in the car that they would have had to fish multiple times with this flimsy homemade fishing tool to get it. And that they did it from three different collection boxes. And she was waiting in her car right across the narrow, uh, you know, side street from the third collection box that he was dealing from with the lights on, ready to pull away right when he got back. Um, and that's what was occurring at each of these collection boxes. And the jury is instructed to use their common sense to not speculate, um, in any other possibility here, uh, other than her being in knowing involved member, um, in this effort is remote and speculative, uh, is not a reasonable fact. And so that's sort of the independent evidence, but I do want to go back to Contreras' testimony. And just, I think that the record of just his testimony and other independent evidence shows that this statement, his credibility did not turn on this statement. It was a limited false exculpatory statement and it provided, it did provide one point of similarity between his testimony and an independent piece of evidence, which was her statement. So it was corroborative in that way. But as I said, there were many of those other points of corroboration, um, that did exactly the same thing. And I do, I think it overstates the, um, importance of this statement to show that it kind of showed them in some sort of joint enterprise. Um, that wasn't that, that might be true if this statement, if the corroboration was that Bade decided this before they ever went out that night. Um, but that's not what the testimony was. It was after we knew we were getting caught, we made up this statement. Uh, and I think that's kind of the same argument against that is the same argument that defense counsel made for the other statements, which is that, you know, when she knew she was going to get in trouble, she just said things, she made up, you know, a story. It didn't mean she was guilty ahead of time. It was just a reaction to getting caught in that moment. So I don't think that there's any special corroborative value of this statement that shows they were, um, in a prearranged plan together. Uh, it was just another simple point of corroboration. Um, and, uh, Counsel, can I, can I ask you to just to shift for a second, just so that I'm clear, I take it the government does not oppose, uh, the part of the appeal that asks us to vacate the two conditions, special conditions? Yes, Your Honor. That's correct. The government agrees that a limited remand of the sentence for the district court to address those two particular conditions. Okay. I didn't want to take you off course, but I want, I wanted to make sure that there was no dispute on that issue. There's not, Your Honor. Thank you. Um, so, uh, and I, I also just want to reference, um, defense counsel referenced, uh, the use of the statement in the closing argument twice. I think it was referenced briefly in one argument, uh, for an element of the possession of stolen mail defense that was not in dispute. Uh, and it was referenced for the point more of consciousness of guilt, not the point of corroboration. Uh, the defense counsel is saying, um, is more harmful or is sort of, I think the crux of their harmless error argument as opposed to consciousness of guilt, which was reflected in many of the statements that were admitted, um, but at trial. Uh, so unless the court has any further questions on harmlessness, I can now turn to the, um, kind of back up and go back to the, um, Miranda section. Um, and for the, for the Miranda point, um, defense counsel contends that Henley created a bright line rule, uh, that is binding on this court that, um, the moment someone is handcuffed, uh, and put in a police car, they're in custody for the purposes of Miranda. And I think that's just not the case. And that's not what Henley purported to hold. Uh, this court would change. Was she free to go? No, Your Honor. She was not free to go. Judge Collins, I'm sorry. We, we, we, we spoke over each other. So I don't have a question. I was going to ask you, do you have a case that, that on facts similar to these, where they're handcuffed in the back of a police car and they were ordered into the police car, that the detention is still labeled a Terry stop and not an arrest? Uh, Your Honor, I don't have a specific case that has these same factual circumstances. But I think the principles that have been elaborated by the Supreme Court and the Ninth Circuit in this area of the case law, um, are... We'd have to go further than any of the Terry cases you've cited. That's my question. Excuse me. I don't think further, Your Honor. I think it's just a different application. Um, there are cases in this circuit and others where a defendant has been handcuffed and, or, and, um, not just handcuffed, but subject to additional sort of physical restraints, um, beyond the handcuffs, for example. I think it was Cervantes Flores. The person was chased down. So physically subdued. The three key things here seem to be in the back of the police car, in handcuffs, and being ordered into the back of the police car. Those seem to be the three most significant things that would weigh in favor of an arrest versus Terry stop. And that was one of my questions. Do you have a case that has those three kind of key elements and says that's a Terry stop? I do not have a case that has those three specific elements in one case, Your Honor, but I think based on the totality of the circumstances here, um, the, those factors were mitigated in several ways that make it distinct from possibly other cases, um, like Henley, where this may have occurred. Uh, amongst them was that the defendant, uh, was told by officer Martinez multiple times that he was not under arrest as this was for safety. Uh, this wasn't the context of three of the, of multiple ongoing investigations, um, which all of which defendant would have been aware of based on the circumstances, um, in the case. And, uh, I see my time has expired, Your Honors. May I just briefly conclude? You may. Oh, excuse me. And just for those factors and the totality of the circumstances here, um, I think the facts indicate the defendant was on custody and this court should affirm the defendant's conviction. Thank you, Ms. Williams. Ms. Kim? You're still on mute apparently. Sorry. Thank you, Your Honor. Um, I'd like to turn back to harmlessness and address the issue of the multiple mailboxes. Um, yes, there was testimony. There was other testimony suggesting that this mail, the 44 pieces of mail had come from different mailboxes. However, as the government's own witness, postal inspector Granger said, those mailboxes were located at 0.1 miles apart. That's at ER 409. So that's just a matter of feet and not inconsistent with Ms. Pyshon's statement that he left, came back with more mail. The other factors, the other, um, supposed independent evidence that the government refers to is not incriminating or actually really in dispute that they were friends. Obviously, by association, it wasn't enough that they had been associating earlier in the day at this motel where there was apparently a third person who was not called, that they had borrowed this car. It was neither of their cars. Those facts alone aren't enough. And the government certainly could have chart, you know, could have tried this case without Marco Contreras with the testimony of the people who put the mail in the mailboxes and officer Martinez, but they chose not to, they chose to offer him a substantial assistance plea agreement, which generally does not go to unimportant witnesses. And they felt that this testimony was important to their case. And as in Henley, where that error was found not to be harmless, they did so at their peril. And we would ask this court to reverse the denial of the suppression motion and to vacate and remand the conditions of supervised release. And if there are no further questions- Let me make sure neither of my colleagues have questions. If not, then with thanks to both sides for their arguments and briefing, we will submit this case.
judges: Siler, Hurwitz, Collins